## AFFIDAVIT

I, Jeff Thomson, having been duly sworn, do hereby depose and state as follows:

### *INTRODUCTION AND AGENT BACKGROUND*

1. I have been a Special Agent with the Federal Deposit Insurance Corporation, Office of Inspector General since May 2020. I was previously employed as a Special Agent with Homeland Security Investigations from July 2007 to May 2020. My duties include the investigation of violations of federal criminal laws, and my experience includes investigations of money laundering, bank fraud and wire fraud.

2. I submit this affidavit in support of an application for a criminal complaint charging Vinicius Santana with wire fraud, in violation of 18 U.S.C. § 1343, and for a warrant to arrest him. As set forth below, there is probable cause to believe that Santana fraudulently obtained a Paycheck Protection Program ("PPP") loan.

3. This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and federal agents, and my review of records described herein. This affidavit is not intended to set forth all of the information that I have learned during this investigation but includes only the information necessary to establish probable cause for the requested complaint.

### *PROBABLE CAUSE TO BELIEVE THAT A FEDERAL CRIME WAS COMMITTED*

#### *Overview of the Paycheck Protection Program*

At all times relevant to this Affidavit,

4. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, enacted in March 2020, was a federal law intended to provide emergency financial assistance to millions of Americans suffering from the economic effects of the COVID-19 pandemic.

1

5.      Through the CARES Act PPP, Congress initially authorized up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses. In or around April 2020, Congress authorized more than $300 billion in additional PPP funding.

6.      In order to obtain a PPP loan, a qualifying business had to submit an application signed by an authorized representative of the business. The application required the business' representative to acknowledge the program rules and to state and provide documentary proof of, among other things, its (i) number of employees and (ii) average monthly payroll expenses. These figures determined the size of the PPP loan that the business was eligible to receive.

7.      Authorized Small Business Administration ("SBA") lenders processed PPP loan applications. Participating lenders funded approved loans using their own monies, which the SBA fully guaranteed. The lenders transmitted data from applications to the SBA in the course of processing the loans, including information about the borrower, the total loan amount, and the listed number of employees.

8.      PPP loan proceeds had to be used by the businesses on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these permissible expenses within a designated period of time and used a certain percentage of the PPP loan proceeds on payroll expenses.

*Relevant Individuals and Entities*

9.      Santana lived in Saugus, Massachusetts and later Florida.

10.     Santana owned Complete Home Care, LLC, a Massachusetts painting company ("CHC"). Santana formed CHC on or about September 2, 2017. In CHC's Certificate of Organization, Santana listed himself as the company's "Resident Agent" and his wife, A.P., as its

"Soc Signatory." Santana listed an address for CHC in Revere, Massachusetts ("the Revere Address").

11. Northeast Bank was a federally insured financial institution and is an approved SBA lender for PPP loans. In or about April 2020, Northeast Bank received an application for and funded a $2.5 million PPP loan for CHC.

12. Lendio, Inc. ("Lendio"), headquartered in Lehi, Utah, was a company that specialized in facilitating small-business lending. Lendio participated in the PPP by, among other things, matching small businesses seeking PPP loans with authorized lenders. The authorized lenders, not Lendio, decided whether to approve and fund the PPP loan applications.

*Overview of the Scheme*

13. In April 2020, Santana applied for four PPP loans on behalf of CHC. The first three applications were denied. In his fourth application, Santana made materially false representations about CHC's employees and payroll expenses, and he supported those false representations with fraudulent documents. Based on the false representations and fraudulent documents, Santana and CHC received a $2.5 million PPP loan.

14. Between approximately May and September 2020, Santana misused the loan proceeds to buy cars, invest in cryptocurrency, and send money to individuals and companies that do not appear to be connected to payroll, utilities, rent, or mortgage payments for Santana's business.

## *The CHC PPP Applications*

*The Failed Applications*

15.     Between approximately April 10, 2020, and April 26, 2020, Santana submitted three unsuccessful PPP applications on behalf of CHC to Lendio. In all three applications, Santana listed himself as CHC's owner, the Revere Address, a phone number ending in 7748, and the following business EIN: xx-xxx6891.

16.     The three applications contained the following representations about CHC's average monthly payroll and number of employees.

| Date | Requested Loan | Average Monthly Payroll | Employees |
|---|---|---|---|
| 4/10/20 | $25,000 | $10,000 | 5 |
| 4/26/20 | $45,000 | $18,000 | 5 |
| 4/26/20[1] | $45,000 | $18,000 | 5 |

17.     In support of these applications, Santana submitted, among other things, an unsigned 2019 IRS Form 1040, and an Individual Income Tax Return completed as a joint filing for himself and his spouse. The form included a 2019 Schedule C, for a "Handyman Service" at the Revere Address with EIN xx-xxx1277, showing a total of $88,577 in gross receipts or sales and zero deductions for wages.

18.     Lenders denied all three applications.

*The Funded CHC Loan*

19.     On or about April 26, 2020, Santana submitted a fourth PPP loan application,

---

[1] Each PPP application submitted on 4/26/20 has a different timestamp.

through Lendio, to Northeast Bank. Santana sought $2.5 million, a loan at least 50 times bigger than three earlier loans.

20. In the fourth application, Santana claimed that CHC had 154 employees and an average monthly payroll of $1,000,000. As with the loan amount, the number of employees and the claimed average monthly dwarfed the figures in the previous three applications for the same entity. Santana identified the "purpose of the loan" as "Payroll," "Lease / Mortgage Interest," and "Utilities." He listed the EIN xx-xxx1277 for CHC.

21. In support of his representations in the fourth application, Santana submitted an IRS Form 944, an Employer's Annual Federal Tax Return,[2] dated April 2, 2020. The form, which bore Santana's signature, purported to reflect CHC's wages and federal payroll tax information for 2019. In it, Santana claimed that CHC (with EIN xx-xxx1277) paid $12,041,600 in wages, tips, and other compensation in 2019.

22. On or about May 11, 2020, after approving Santana's fourth application, Northeast Bank wired $2,500,000 to an account in CHC's name at the East Boston Savings Bank ("the EBSB Account").

*Misrepresentations in the Funded CHC PPP Application*

23. Based on my training and experience investigating financial frauds and for the reasons described below, there is probable cause to believe that Santana made materially false representations to Lendio and Northeast Bank in order to obtain $2.5 million in PPP funding.

24. CHC's bank records and tax return information show that the company engaged in

---

[2] IRS Form 944 is an official document that an employer files with the Internal Revenue Service ("IRS") every year in order to report income taxes, Social Security taxes and Medicare taxes withheld from employees' paychecks. As set forth in further detail below, Santana did not file this form with the IRS.

some legitimate business between 2018 and 2021, but nowhere near the amounts listed in Santana's successful application. Rather, CHC's records show business activity consistent with the figures listed in CHC's first three unsuccessful PPP loan applications.

25.     *First*, there are clear contradictions between the three unsuccessful loan applications and the fourth successful application. Each lists the same business name, address, owner, and business phone number. But they list different average monthly payroll figures, numbers of employees, and EIN numbers. The purported number of employees in the successful application is roughly thirty times larger than that listed in the unsuccessful applications. The purported average monthly payroll in the successful applications is roughly fifty-five times greater than that listed in the unsuccessful applications. As a result, the requested loan in the fourth application was almost 140 times larger than the requested loan in the unsuccessful applications.

26.     *Second*, I have reviewed bank records for the EBSB Account that do not reflect the payroll activity that Santana represented in either the fourth application or the purported IRS Form 944 that Santana submitted with it. Santana opened the EBSB Account in the name of CHC on or about May 4, 2020—just seven days before CHC received $2.5 million from Northeast Bank.[3] Accordingly, the EBSB Account does not reflect any payroll activity for CHC in 2019. To the extent that there were payments consistent with payroll in the EBSB Account later in 2020, it was nowhere near the size represented in the successful PPP application.

27.     I have also reviewed records for other bank accounts opened and used by Santana in 2019 and 2020, including accounts at TD Bank and USAA. None of the accounts reflects the purported payroll activity listed in the successful PPP loan application. For example, in support of the unsuccessful PPP applications, Santana included records associated with an account in his

---

[3] The EIN for CHC listed on the signature card is xx-xxx6891.

name at TD Bank (the "TD Bank Account"). In 2019, the daily account balance for the TD Bank Account never surpassed $35,000. Santana closed the account in or around July 2019.

28. ***Third***, I have also reviewed IRS tax returns filed by Santana. These returns indicate that Santana did not file the purported Form 944 that he included in the successful PPP loan application. The IRS has confirmed that it does not have any independent tax filings by CHC with EIN xx-xxx-1277-- the EIN that Santana listed on the successful application. Instead, in 2018 and 2019, Santana filed Schedule C for CHC with EIN xx-xxx-1277, as part of his Form 1040. In 2018, Santana represented that his business as a "Handyman Service" for CHC had gross receipts or sales of $153,493 and total expenses of $165,227. In 2019, Santana omitted a business name and only listed the business as a "Handyman Service." Santana represented that the business had gross receipts of $88,577 and total expenses of $89,752.

*Misuse of the CHC PPP Funds*

29. On or about May 11, 2020, Northeast Bank wired $2,500,000 to the EBSB Account. Before receiving the funds, on May 4, 2020, the EBSB Account balance was $60. Instead of using the PPP funds for payroll, mortgage payments, or utilities, Santana spent the PPP funds on personal expenses, such as cars and cryptocurrency, and sent money to businesses and individuals that were not related to CHC's payroll. After receiving the PPP funds, Santana made, among others, the following payments:

    a. Between May 13, 2020, and June 15, 2020, Santana sent approximately $825,332 in checks from the EBSB Account to Blackstone Construction Group, a business registered in Massachusetts. According to the Massachusetts Secretary of State's website, Individual-1 incorporated this business in or around July 2019 and dissolved it in or around December 2021. Most of the checks to Blackstone Construction Group appear to have been cashed at a check-

cashing business in Marlborough, Massachusetts. Based on my review of account records associated with both Santana and CHC, I have not identified any additional payments to this business.

  b. On May 14, 2020, Santana issued a check from the EBSB Account for $7,861.12 to USAA Federal Savings Bank to satisfy an auto-financing loan that he had previously obtained.

  c. Between May 18, 2020, and May 21, 2020, Santana sent $185,900 in checks from the EBSB Account to DPC Construction Services, a business registered in Massachusetts.[4] According to the Massachusetts Secretary of State website, Individual-2 incorporated this business in or around February 2018 and continues to run the business. These checks appear to have been similarly cashed at the same check-cashing business in Marlborough, Massachusetts described above. Based on my review of account records associated with both Santana and CHC, I have not identified any additional payment to this business.

  d. On May 20, 2020, Santana issued a bank check from the EBSB Account for approximately $9,681 to JP Morgan Inc. to pay off a car loan issued by Chase Auto Finance.

  e. On July 2, 2020, Santana issued a bank check from the EBSB Account to Auto Xpress Inc. for $29,471 for a 2019 Toyota Highlander.

  f. On July 25, 2020, Santana authorized a bank check from the EBSB Account for $90,000 to Audi of Burlington.

  g. Between September 4 and September 14, 2020, Santana wired $900,000 from the EBSB Account to an account at Kraken (a cryptocurrency exchange) that Santana opened on or about September 4, 2020.

---

[4] Based on a review of purported Intuit payroll records associated with Santana, he appears to maintain a business interest in the company.

30. On September 15, 2020, the account balance for the EBSB had fallen to $41,111.70. During the time that Santana spent the majority of the PPP funds (approximately May 11, 2020, to September 20, 2020), there were no deposits greater than $1 into the CHC EBSB Account.

31. Between December 22 and December 28, 2020, Santana wired $457,816.43 from his Kraken account into the EBSB Account, increasing the balance to $468,642.83. On December 29, 2020, Santana authorized a $407,587.60 bank check from the EBSB account to the Moran Law Office for the purchase of a residential property in Lowell, Massachusetts (the "Lowell Property").

32. Based on my review of records maintained by the Middlesex North Registry of Deeds, on or about December 30, 2020, Mytheos Properties Holdings LLC ("Mytheos") recorded a deed for the Lowell Property. According to records maintained by the Massachusetts Secretary of State, Santana is the manager of Mytheos, which has its principal place of business listed as the Revere Address. Mytheos was incorporated on December 29, 2020 (the same day as the property purchase).

33. On or about January 19, 2021, Santana closed the EBSB Account.

34. On or about January 8, 2021, Santana opened a bank account in the name of CHC at JP Morgan Chase (the "JPMC Account"). Santana listed the Revere Address as the business address and EIN xx-xxx6891. Shortly after opening the JPMC Account, between January 19 and January 28, 2020, Santana transferred approximately $257,510 from his Kraken account to the JPMC Account.

## CONCLUSION

35. Based on the information described above and my training and experience investigating financial frauds, there is probable cause to believe that: on or about May 11, 2020, Santana, having devised and intending to devise a scheme and artifice to defraud, and for

obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, caused to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, to wit: a $2,500,000 wire transfer from Northeast Bank to Santana at the EBSB Account, in violation of Title 18, Untied States Code, Section 1343.

Sworn to under the pains and penalties of perjury.

Respectfully submitted,

Jeff G. Thomson
Special Agent
Federal Deposit Insurance Corporation

Sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on June 6, 2022

11:34 a.m.

Hon. David H. Hennessy
United States Magistrate Judge

-

10